UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christine Gage,

           Plaintiff,

                        **MEMORANDUM OPINION AND ORDER**
      v.                          Civil No. 09-2141 ADM/JJG

HSM Electronic Protection Services, Inc., d/b/a
Stanley Convergent Security Solutions, Inc.,

           Defendant.

_____

Lawrence M. Baill, Esq., and Steven L. Theesfeld, Esq., Yost & Baill, LLP, Minneapolis, MN, on behalf of Plaintiff.

Wendy M. Canaday, Esq., Flynn, Gaskins & Bennett, LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On April 26, 2010, the undersigned United States District Judge heard oral argument on Defendant HSM Electronic Protection Services, Inc., ("HSM") d/b/a Stanley Convergent Security Solutions, Inc.'s ("Stanley")[1] Motion for Summary Judgment [Docket No. 7] and Plaintiff Christine Gage's ("Gage") Motion for Summary Judgment [Docket No. 11]. For the reasons set forth below, Defendant's Motion is granted and Plaintiff's Motion is denied.

---

[1] Gage's Complaint names Defendant as "HSM Electronic Protection Services, Inc., d/b/a Stanley Convergent Security Solutions, Inc." The contract at issue predates Stanley's purchase of HSM in 2007. The Court will follow the parties' practice of referring to the Defendant as "Stanley."

## II. BACKGROUND[2]

HSM sells alarm-monitoring services to customers. In 2006, Gage signed a "Residential Agreement" (the "Agreement") with HSM to install a security system and provide alarm-monitoring services for her home. Notice of Removal [Docket No. 1], Ex. A (Compl.) ¶ I. The Agreement includes the following exculpatory clause:

> **HSM's Limit of Liability**. . . . CUSTOMER AGREES THAT HSM IS NOT RESPONSIBLE FOR PERSONAL INJURY OR OTHER LOSSES WHICH ARE ALLEGED TO BE CAUSED BY IMPROPER OPERATION OR NON-OPERATION OF THE SYSTEM AND/OR SERVICE, including cases where the system and/or service never functions whether due to defects in the system and/or service or HSM's acts or omissions in receiving and responding to alarm signals . . . .

Canaday Decl. [Docket No. 17] Ex. C (Residential Agreement). The Agreement provides "that HSM is not an insurer and that insurance, covering personal injury and other losses, shall be obtained by Customer." Id. The Agreement also includes a "No Subrogation" clause:

> No Subrogation. Customer does hereby for himself/herself and other parties claiming under him/her, release and discharge HSM from and against all claims arising from hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against HSM . . . .

Id. The Agreement further provides that "IF ANY LIABILITY IS IMPOSED ON HSM, ITS EMPLOYEES, AGENTS OR REPRESENTATIVES, IT WILL BE LIMITED TO SIX (6) TIMES THE MONITORING CHARGE PROVIDED ABOVE OR TWO HUNDRED FIFTY

---

[2] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, any disputed facts are noted.

DOLLARS ($250.00), whichever is greater." Id.

On November 21, 2008, at 4:30 a.m., Stanley received a low-temperature alarm from Gage's home. Canaday Decl. Ex. B; Canaday Decl. Ex. D (Haskell's Dep.) at 14. Stanley's records show that at 4:31 a.m., one of its operators, Mary Bachman ("Bachman"), acknowledged the alarm. Ex. B; Haskell Dep. at 14. When Stanley receives an alarm, its policy requires operators to call the premises and, if no one answers, call the persons identified on the customer's call list. Haskell Dep. at 21-22. At 4:34 a.m., Stanley's records reflect Bachman pushed a control button to initiate a call to the residence.[3] Ex. B; Haskell Dep. at 21. At 4:35 a.m., Stanley's records show that Bachman manually entered "answer, CUST ADVISED." Ex. B. The incident was then closed. Haskell Dep. at 27.

Stanley makes an audio recording of calls to its customers' premises. Id. at 34-37. Stanley was unable to locate Bachman's recorded contact with the customer or her representative, and therefore admits that one possible explanation is that Bachman did not speak with anyone. Id. at 35-37. Bachman, a contract employee from a temporary agency, no longer works for Stanley. See id. at 48-49. Stanley's representative testified that Bachman could have taken another incoming call while handling the alarm from the Gage residence and may have entered information on the Gage account that was intended for another account. Id. at 55. Thus, while Stanley's records show Bachman initiated a call to the phone number listed on the Agreement, there is no evidence that Bachman advised anyone of the low temperature alarm.

Gage alleges that two months after the November 21, 2008 alarm, on January 16, 2009,

---

[3] When the alarm signaled, a control button with the phone number listed on the Agreement automatically appeared on Bachman's computer screen.

the furnace failed due to low temperature causing a pipe to burst and resulting in property damage of $252,310.79. Gage states that on two occasions prior to the November 21, 2008 incident, her Business Manager, Donna Snyder, informed Stanley that the number on the Agreement was not operational and provided a new call list and corresponding phone numbers. Snyder Aff. [Docket No. 14] ¶ 5; Exs. B and C. Stanley disputes that Gage or her representative provided this information. Gage's insurer filed this subrogation action alleging that Stanley's actions constituted willful and wanton negligence that is exempt from the Agreement's exculpatory clause.

### III. DISCUSSION

**A. Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. Effect of the Exculpatory Clause**

Stanley contends that Gage's claim is barred by the exculpatory provision in the

4

Agreement. Minnesota recognizes the public interest in freedom of contract and upholds exculpatory provisions in certain circumstances. See Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 923 (Minn. 1982). However, such a clause cannot operate to limit liability for intentional, willful, or wanton acts. See id. Thus, while a limitation of liability clause is effective against allegations of negligent acts or omissions, a party subject to such a clause is not foreclosed from a claim based on intentional, willful, or wanton acts. See Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074, 1080 (D. Minn. 1999); Morgan Co. v. Minnesota Mining & Mfg. Co., 246 N.W.2d 443, 448 (1976) (holding that an exculpatory clause is valid as to acts of negligence but not to claims of "willful and wanton negligence, intentional misconduct, and fraud and misrepresentation"). The core dispute then is whether Stanley's acts or omissions transcend ordinary negligence and rise to the level of intentional, willful, or wanton negligence.

Stanley relies on cases from other jurisdictions where courts have decided that conduct by alarm companies was not intentional, willful, wanton, or grossly negligent, and therefore barred by exculpatory clauses. Gage counters that these cases are not binding on this Court and that several of the courts analyzed the facts applying the concept of gross negligence as opposed to intentional, willful, or wanton negligence. Gage argues that the Court does not have to conclude that Stanley was grossly negligent, only that it acted intentionally or willfully.

Gage cites Ackerman v. American Family Mutual Insurance Co., 435 N.W.2d 835, 840 (Minn. Ct. App. 1989) to argue that, in Minnesota, willful and wanton negligence is of substantially less magnitude than gross negligence. Ackerman holds: "'gross negligence' is defined as very great negligence or absence of even slight care, but as not equivalent to wanton and willful wrong." By contrast, the definition of willful and wanton negligence is: "a failure to

5

exercise ordinary care after discovering another in a position of peril." Bryant v. N. Pac. Ry. Co., 221 Minn. 577, 585, 23 N.W.2d 174, 179 (1946). In Peterson v. Honeywell, Inc., No. C2-93-1795, 1994 WL 34200, *4 (Minn. Ct. App. Feb. 8, 1994), the court cites the Bryant court's definition of willful and wanton negligence and then states: "Thus a cause of action for willful and wanton negligence arises where there has been a 'reckless disregard of the safety of the person or property of another by failing *after and not before* discovering the peril to exercise ordinary care to prevent the impending injury.'" Other cases appear to blur the distinction between gross negligence and willful and wanton negligence, making no comment as to the different standards. See American Litho, Inc. v. Imation Corp., No. 08-CV-5892, 2010 WL 681298, *6-7 (D. Minn. Feb. 23, 2010); Honeywell, Inc. 43 F. Supp. 2d at 1080; Hanson v. Bieloh, No. A06-1619, 2007 WL 1893315, *2-3 (Minn. Ct. App. July 3, 2007); Beehner v. Cragun Corp., 636 N.W. 2d 821, 829-830 (Minn. Ct. App. 2001). Furthermore, many of the jurisdictions that use the term gross negligence define the concept, as do Minnesota courts, in terms of recklessness. S&M Golden, Inc. v. Alarm Mgmt. II, L.L.C., No. 263722, 2006 WL 141847 (Mich. App. Jan. 19, 2006) (unpublished) ("To establish gross negligence, a plaintiff must show that the defendant engaged in "'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'"); Hartford Ins. Co. v. Holmes Prot. Group, 250 A.D.2d 526, 528 (N.Y. Sup. Ct. 1998) (stating that gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.") (quoting Colnaghi, U.S.A. v. Jewelers Prot. Servs., 81 N.Y.2d 821, 823-24 (1993)); Consumers Distribs. Co. v. Baker Protective Servs., 202 A.D.2d 327, 328 (1994) (same). Finally, Black's Law Dictionary defines "gross negligence" as "[a] conscious, voluntary act or omission in reckless

6

disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages. – Also termed *reckless negligence; wanton negligence; willful negligence; willful and wanton negligence*; . . ." Black's Law Dictionary 1062 (8th ed. 2004) (emphasis added). Regardless of whether there is a principled distinction between willful and wanton negligence and gross negligence, the cases cited by Stanley that are analyzed under a gross negligence standard, although not binding, are instructive on identifying what conduct constitutes a heightened degree of negligence.

In Hartford Insurance Co., the court explained "[d]elayed or inadequate response to an alarm signal, without more, is not gross negligence." 250 A.D. 2d at 528. There, the defendant alarm company failed to adequately respond to two burglaries at the plaintiff's business due to the company's understaffing and policy to confirm that alarms sounded at certain high-traffic times of day were not false alarms. In Consumers Distributing Co., the failure of defendant's employee on two occasions to respond to a signal indicating a possible burglary despite hourly noise reminders was not gross negligence, thus entitling defendant to summary judgment based on a contractual limitation on liability for ordinary negligence. 202 A.D.2d 327. Numerous other courts have reached similar conclusions. See Sanif, Inc. v. Iannotti, 119 A.D.2d 654 (N.Y. Sup. Ct. 1986) (exculpatory clause relieved defendant of liability for its alleged failure to monitor and report an alarm signal indicating an illegal entry which constituted simple negligence); Advance Burglar Alarm Sys. v. D'Auria, 110 A.D.2d 860 (N.Y. Sup. Ct. 1985) (exculpatory clause relieved defendant of liability where it failed to provide timely guard response to alarm signal); Dubovsky & Sons v. Honeywell, Inc., 89 A.D.2d 993 (N.Y. Sup. Ct. 1982) (exculpatory clause relieved defendant of liability where it failed to send competent

person to ascertain the cause of an alarm signal).

By contrast, a triable issue of gross negligence was found in Green v. Holmes Protection, 216 A.D.2d 178, 179 (N.Y. Sup. Ct. 1995), where an alarm company's employee gave out the security code for a customer's alarm system over the phone at 4:00 a.m. to burglars who gave a false name. Similarly, in Hanover Insurance Co. v. D & W Central Station Alarm Co., Inc., 164 A.D.2d 112, 115 (N.Y. Sup. Ct. 1990), the court found issues of fact as to whether there was gross negligence when a security company instructed its guard to "'forget the assignment'" when he had difficulty getting into the premises, and failed to notify the police upon receiving four alarm signals from the customer's building in three hours.

Whether a defendant's failure to act with reasonable care constitutes negligence or intentional, willful or wanton negligence can raise a question of fact for a jury to decide. When the facts fail to leave room for ordinary minds to differ, however, the court is justified in characterizing the conduct. Stanley's conduct is akin to the conduct held to be insufficient to constitute gross negligence as a matter of law in Hartford, Consumers Distributing, Sanif, Inc., Advance Burglar Systems, and Dubovsky & Sons and stands in stark contrast to the extreme conduct present in Green and Hanover. The conduct of Stanley's employee, Bachman, to inadequately respond after receiving the alarm signal may have been negligent, but it did not evince the recklessness necessary to avoid the exculpatory clause between Gage and Stanley.

Gage's claim that Stanley failed to change the contact number on the Agreement does not establish a basis for a claim of willful and wanton negligence because neither Gage nor her property were in peril before the low temperature alarm sounded. The facts are not sufficient to establish that, after the low temperature alarm went off, Bachman's actions were intentional or

8

willful. Bachman's conduct was, at worst, negligent, thus Gage's recovery is limited to the specified amount in the Agreement in cases of Stanley's negligence. Because the exculpatory clause covers the conduct at issue here, Gage's claim fails and Gage's insurer's subrogation claim also fails.[4]

## C. Claim for Fraud, Intentional Misconduct, and/or Misrepresentation

Stanley next argues that Gage's Complaint does not satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This rule applies to common law fraud claims made under Minnesota law where the gravamen of the complaint is fraud. Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 1003 (D. Minn. 2006). To be sufficiently particular, Gage must provide the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995).

To establish a cause of action for fraud under Minnesota law, a plaintiff must show (1) a false representation or omission of a material fact, (2) that the defendant knew the representation or omission to be false, (3) that the defendant intended the plaintiff to act on the representation or omission, (4) the plaintiff was justified in relying on the representation or omission, and (5) the plaintiff suffered damages. Bruzer v. Danek Medical, Inc., Civ. No. 3-95-971, 1998 WL

---

[4] Although the Court does not reach the issue of whether the subrogation claim is barred by the Agreement, the express language of the "No Subrogation" clause seems to present a strong argument that such a claim is not permitted.

1048225, at *6 (D. Minn. 1998); see also Davis v. Re-Trac Mfg. Corp., 276 Minn. 116, 149 N.W.2d 37, 38-39 (1967).

Stanley argues that Gage's fraud based claims are predicated on conclusory allegations of fraud, misrepresentation, and omissions that have not been pleaded with sufficient particularity to satisfy Rule 9(b). Specifically, Stanley argues that Gage has failed to plead what representations or omissions Stanley made to Gage, and what action Gage took in reliance on those representations or omissions.

Gage counters that dismissal is premature because discovery is ongoing and she should have a chance to develop evidence to support her arguments. The Pretrial Scheduling Order establishes that fact discovery closed on March 5, 2010. Gage's Complaint does not set forth exactly who committed fraud, exactly how that person committed fraud, or exactly when that person committed fraud. The Complaint makes a single, general allegation of fraud with no supporting facts. Since filing the Complaint, Gage has not come forward with a single, specific allegation of fraud. Also fatal to its claim, Gage has not made a sufficient showing of what representations or omissions Stanley made to Gage, knowledge of their falsity at the time they were made, or intent to induce Gage's reliance. The challenged conduct in the Complaint are unattributed, conclusory allegations and fail to satisfy the heightened pleading requirements of Rule 9(b) and, therefore, these claims are dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 7] is **GRANTED** and Plaintiff's Motion for Summary Judgment [Docket No. 11] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: June 14, 2010.