UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTINE GAGE, | Case No. 09-CV-2141 (PJS/JJG) |
| Plaintiff, | |
| v. | ORDER |
| STANLEY CONVERGENT SECURITY SOLUTIONS, INC., | |
| Defendant. | |

Steven Theesfeld and Lawrence M. Baill, YOST & BAILL, LLP, for plaintiff.

Wendy M. Carlisle, LEONARD STREET AND DEINARD, PA, for defendant.

Under Minnesota law, an exculpatory clause in a contract can prevent an injured party from suing a tortfeasor for negligent acts, but, as a matter of public policy, an exculpatory clause in a contract cannot prevent an injured party from suing a tortfeasor for intentional, willful, or wanton acts. The question in this case — apparently a question of first impression under Minnesota law — is whether an *anti-subrogation* clause in a contract can prevent the injured party's *insurer* from bringing a subrogation action against the tortfeasor for intentional, willful, or wanton acts.

In 2006, plaintiff Christine Gage purchased a home-alarm system and entered into a contract for alarm-monitoring services from defendant Stanley Convergent Security Solutions, Inc. ("Stanley"). Gage alleges that, in November 2008, Stanley failed to properly respond to a low-temperature alert from her home. As a result of Stanley's omission, Gage contends, her furnace failed in January 2009 and a water pipe burst, causing over $250,000 in damage to her home. Gage was compensated by her insurer, and the insurer brought this subrogation action against Stanley.

Stanley previously moved for summary judgment, arguing that an exculpatory clause in the Gage-Stanley contract precluded Gage's negligence claim.[1] Judge Montgomery granted the motion, finding that Gage had alleged no more than ordinary negligence and thus that the exculpatory clause was enforceable under Minnesota law. *See* ECF No. 26. The United States Court of Appeals for the Eighth Circuit reversed, holding that Gage had alleged willful and wanton negligence — which is something more than ordinary negligence — and thus that the exculpatory clause was unenforceable under Minnesota law. *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 829 (8th Cir. 2011). After remand, Judge Montgomery recused, and the case was reassigned to the undersigned.

Stanley now moves for summary judgment a second time, arguing that this lawsuit is barred by a different clause in the contract between Gage and Stanley: an anti-subrogation clause. The anti-subrogation clause provides, in relevant part, as follows:

---

[1]The exculpatory clause provides, in pertinent part, as follows:

> CUSTOMER AGREES THAT [STANLEY] IS NOT RESPONSIBLE FOR PERSONAL INJURY OR OTHER LOSSES WHICH ARE ALLEGED TO BE CAUSED BY IMPROPER OPERATION OR NON-OPERATION OF THE SYSTEM AND/OR [MONITORING] SERVICE, including cases where the system and/or service never functions whether due to defects in the system and/or service or [Stanley's] acts or omissions in receiving and responding to alarm signals.

Canaday Decl. Apr. 25, 2012 [ECF No. 53] Ex. C at 1.

> **No subrogation.** Customer does hereby for himself/herself and other parties claiming under him/her, release and discharge [Stanley] from and against all claims arising from hazards covered by Customer's insurance, it being expressly agreed and understood that no insurance company or insurer will have any right of subrogation against [Stanley].

Canaday Decl. Apr. 25, 2012 [ECF No. 53] Ex. C at 2.

Gage's insurer (through Gage) argues that, for the same reasons that an *exculpatory* clause is invalid under Minnesota law as it applies to claims of intentional, willful, or wanton conduct, an *anti-subrogation* clause should be found invalid under Minnesota law as it applies to similar claims. The Court agrees.

As an initial matter, the Court cannot understand what gave Gage the right to sign a contract that waived the subrogation rights of her insurer. Under the common law of Minnesota, an insurer has an equitable right of subrogation against a third-party tortfeasor who causes a loss to its insured. *Great N. Oil Co. v. St. Paul Fire & Marine Ins. Co.*, 189 N.W.2d 404, 406 (Minn. 1971) ("Whether or not the insurance policy expressly reserves subrogation rights, it is the universal rule that upon payment of a loss, an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act caused the loss."); *see also Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997) (subrogation is an equitable doctrine, but the parties may by contract provide for greater subrogation rights). The purpose of subrogation is "'to place the charge where it ought to rest, by compelling the payment of the debt by him who ought in equity to pay it.'" *Medica, Inc.*, 566 N.W.2d at 77 (quoting *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn. 1983)).

Under the equitable doctrine of subrogation, the insurer steps into the shoes of the insured. As a result, the rights of the insurer are identical to the rights of its insured. *Great N. Oil Co.*, 189 N.W.2d at 406. Thus, an insured may as a practical matter defeat the subrogation rights of her insurer by settling or releasing her claims against the tortfeasor. *Id.* at 406-07. Importantly, however, the insurer loses its right of subrogation in this situation as a consequence of the insured relinquishing her *own* rights against the tortfeasor. *See Medica, Inc.*, 566 N.W.2d at 77 ("The insurer stands in the shoes of the insured and acquires all of the rights the insured may have against a third party.").

Here, however, Gage did not relinquish *her* right to sue Stanley for intentional, willful, or wanton conduct. As the Eighth Circuit held, the exculpatory clause in the Gage-Stanley contract is unenforceable under Minnesota law to the extent that it applies to Gage's claim for willful and wanton negligence. *Gage*, 655 F.3d at 825; *see also Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982) ("If the clause is either ambiguous in scope or purports to release the benefitted party from liability for intentional, willful or wanton acts, it will not be enforced."). Logically, then, because Gage retains the right to sue Stanley for willful and wanton negligence, her insurer likewise retains the right to bring a subrogation action against Stanley for the same conduct.

It is true that, in her contract with Stanley, Gage purported to waive the right of her insurer to bring a subrogation action against Stanley. But it is a mystery to the Court — a mystery that Stanley has not cleared up — why Gage would have the authority to waive rights that, under the common law, belong to her insurer. After all, at the time that Gage signed the

contract with Stanley, Gage was not employed by her insurer or acting as its agent. What, then, gave her the authority to waive the insurer's rights?

Putting that aside, the question on which the parties have focused is the enforceability of the anti-subrogation clause insofar as it applies to claims for intentional, willful, or wanton conduct. As noted, the Eighth Circuit has already held that, under Minnesota law, the exculpatory clause in the Gage-Stanley contract is unenforceable insofar as it purports to waive Gage's right to sue Stanley for willful and wanton negligence. Is the anti-subrogation clause in the Gage-Stanley contract also unenforceable insofar as it purports to waive the insurer's right to bring a subrogation action against Stanley for willful and wanton negligence?

Stanley argues that the anti-subrogation clause is enforceable because it differs from the exculpatory clause in important respects. To begin with, Stanley contends that the anti-subrogation clause, unlike the exculpatory clause, is merely a "risk-shifting" provision — that is, it merely shifts the risk of liability for harm caused by Stanley's tortious conduct from Stanley to Gage's insurer. But exculpatory clauses and anti-subrogation clauses are *both* "risk-shifting" provisions; they differ only in the identity of the party to whom the risk is shifted. In this case, for example, the exculpatory clause shifted risk from Stanley to Gage, whereas the anti-subrogation clause — when combined with a clause in the Gage-Stanley contract requiring Gage to carry insurance[2] — shifted risk from Stanley to Gage's insurer.

Admittedly, if a homeowner did not purchase insurance, then the anti-subrogation clause would not shift any liability from Stanley to an insurer, as there would be no insurer in the picture. But almost every homeowner purchases insurance, and, as noted, Stanley includes in its

---

[2]Canaday Decl. Apr. 25, 2012 [ECF No. 53] Ex. C at 1.

contracts a provision that *requires* the homeowner to purchase insurance. This ensures that, if a homeowner is injured by Stanley, the homeowner will be able to recover from her insurer, and the insurer will not be able to bring a subrogation action against Stanley. Thus Stanley has effectively insulated itself from being held liable for its own wrongful acts.[3]

Stanley's main argument is that, although an exculpatory clause leaves the injured homeowner without a source of compensation by barring her from suing the tortfeasor, the anti-subrogation clause in no way restricts the ability of the homeowner to sue the tortfeasor. What Stanley says is true, and if the only reason why exculpatory clauses are held invalid as applied to intentional, willful, or wanton conduct is because they deprive the injured party of compensation, Stanley would be on to something. But Stanley cites no cases — and the Court has found no cases — suggesting that the sole reason why Minnesota does not enforce exculpatory clauses with respect to intentional, willful, or wanton conduct is because Minnesota is concerned about the ability of the injured party to be compensated.

The absence of such cases is not surprising. If compensation were the driving consideration, one would expect Minnesota to bar exculpatory clauses altogether. After all, a party injured by ordinary negligence is just as much in need of compensation as a party injured by intentional, willful, or wanton conduct. Obviously, the difference between claims for ordinary negligence, on the one hand, and claims for intentional, willful, or wanton conduct, on the other hand, is not the nature of the victim's need for compensation, but the nature of the tortfeasor's

---

[3] Moreover, it is not true that an anti-subrogation clause shifts the risk entirely to the injured party's insurer. Some of the risk is still borne by the homeowner, who must procure and pay for the insurance. Thus, the homeowner continues to bear some of the financial burden inflicted on account of the tortfeasor's intentional, willful, or wanton conduct.

culpability. And just as obviously, the reason why Minnesota enforces exculpatory clauses insofar as they apply to ordinary negligence, but refuses to enforce exculpatory clauses insofar as they apply to intentional, willful, or wanton conduct, is because Minnesota wants to create additional deterrence of the latter by ensuring that the tortfeasor is held financially responsible.

From the standpoint of deterrence, there is no reason to distinguish between exculpatory clauses and anti-subrogation clauses. In this case, for example, enforcing the exculpatory clause would leave Gage — and not Stanley — to suffer the consequences of Stanley's willful and wanton negligence. Enforcing the anti-subrogation clause would leave Gage's insurer — and not Stanley — to suffer the consequences of Stanley's willful and wanton negligence. If *either* clause is enforced, then, Stanley would be insulated from being held accountable for its willful and wanton negligence.

Stanley argues that enforcing the anti-subrogation clause is consistent with the need to deter intentional, willful, and wanton conduct because insurers can account for such clauses when setting premiums. The Court cannot follow Stanley's argument. It is hard to understand how *tortfeasors* such as Stanley would be deterred by the fact that *homeowners* such as Gage have to pay increased insurance premiums to account for the inability of their insurers to recover from tortfeasors in subrogation actions. Not only would this higher premium fail to deter the tortfeasor — who does not have to pay it — but this higher premium would also impose costs on the injured policyholder for the benefit of the tortfeasor.

Stanley also points to various public-policy rationales for enforcing the anti-subrogation clause. For example, Stanley argues that such clauses deter litigation and allow parties to plan their affairs by obtaining insurance to cover losses. The problem with these arguments, though,

is that they apply with equal or greater force to exculpatory clauses. After all, nothing deters litigation more than an exculpatory clause. And, although exculpatory clauses do not always explicitly mention the issue of insurance, parties to a contract containing an exculpatory clause are no doubt aware that they should procure their own insurance, as they will not be able to sue the tortfeasor for compensation. Yet Minnesota courts do not enforce exculpatory clauses except as applied to ordinary negligence.

Finally, Stanley points to numerous cases in which Minnesota courts have enforced anti-subrogation clauses. In none of those cases, however, was there any suggestion that anything other than ordinary negligence was at issue. *See Rahr Malting Co. v. Climatic Control Co.*, 150 F.3d 835, 836 (8th Cir. 1998) ("Rahr alleges Climatic was negligent"); *Emp'rs Mut. Cas. Co. v. A.C.C.T., Inc.*, 580 N.W.2d 490, 491 (Minn. 1998) ("We are asked to decide whether a waiver clause in a standard American Institute of Architects' (AIA) contractor agreement bars all subrogation suits brought by the owner's insurer for damages negligently caused by the contractor while performing pursuant to the contract."); *Dolphine Mfg., Inc. v. Tehaar*, 404 N.W.2d 295, 297 (Minn. Ct. App. 1987) ("an agreement which releases a contracting party from liability for its own negligent acts also defeats the subrogation rights of the insurer"). These cases thus reflect the unremarkable proposition that a party can waive its own claims for ordinary negligence and, by doing so, effectively eliminate the insurer's ability to sue for subrogation. *See Emp'rs Mut. Cas. Co.*, 580 at 493 ("an insured may defeat an insurer's right of subrogation by settling and/or releasing all potential claims against the alleged tortfeasors").

For these reasons, the Court holds that the anti-subrogation clause in the Gage-Stanley contract is unenforceable under Minnesota law insofar as it applies to Gage's claim against Stanley for willful and wanton negligence. That claim will have to be tried.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for summary judgment [ECF No. 50] is DENIED.

Dated: August 13, 2012                     s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge